UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| J&J SPORTS PRODUCTIONS INC., <br><br> Plaintiff, <br><br> v. <br><br> SHERNAKEIA WARD, *individually and doing business as* Keya's Corp., *doing business as* Fischer's Sports Bar & Grill, and KEYA's CORP., *doing business as* Fischer's Sports Bar & Grill, <br><br> Defendants. | Case No. 10-cv-193-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss or, in the Alternative, Motion to Strike (Doc. 10). Plaintiff filed a Response (Doc. 21-1) thereto, to which Defendants submitted a Reply (Doc. 11).

For the following reasons, the Court **DENIES** the instant motion.

**BACKGROUND**

**I.     Facts**

For purposes of a motion to dismiss, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007). The Court, accepting all of Plaintiff's factual allegations as true and drawing all reasonable inferences in its favor, finds as follows:

Plaintiff J&J Sports Productions, Inc. (hereinafter "J&J"), a commercial distributor of sporting events primarily conducting business out of Campbell, California, paid for and received the exclusive nationwide television distribution rights to *"Unfinished Business" Manny Pacquiao v. Juan Manuel Marquez II, WBC Super Featherweight Championship Fight Program* (hereinafter "the Program"). Airing on March 15, 2008, the Program not only included the title bout between Manny Pacquiao and Juan Manuel Marquez II but all under-card bout and fight commentary that accompanied its broadcast. J&J expended a substantial amount of money in marketing, promoting, administering, and, ultimately, transmitting the Program.

With its exclusive distribution rights in hand, J&J entered into numerous sublicensing agreements with a variety of commercial entities throughout the country. These agreements granted said entities the right to publicly exhibit the Program to patrons within their respective establishments (i.e., bars, taverns, casinos, hotels, racetracks, etc.). One entity that did not enter into a sublicensing agreement with J&J was Defendant Keya's Corp., which operates a sports bar and grill in Cahokia, Illinois. Despite knowledge that the Program was not to be intercepted, received, and exhibited unless they entered into a sublicensing agreement with J&J, Keya's Corp. and its principal, Defendant Shernakeia Ward (hereinafter collectively referred to as "Defendants"), willfully exhibited the Program at the time of its transmission in order to privately profit. In response, J&J eventually brought suit in this Court.

## II.     Relevant Procedural Posture

On March 12, 2010, J&J filed its Complaint (Doc. 2), which remains the operative pleading in this case. J&J asserts that Defendants are jointly and severally liable by way of the following three legal claims: 1) violation of 47 U.S.C. § 605, *et seq.*, addressing unauthorized

publication or use of communications (Count I); 2) violation of 47 U.S.C. § 553, *et seq.*, addressing unauthorized reception of cable services (Count II); and, 3) conversion (Count III). With respect to the claim for tortious conversion, J&J seeks compensatory damages and attorneys' fees and costs.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants now move to dismiss the claim for tortious conversion. Alternatively, pursuant to Federal Rule of Civil Procedure 12(f), Defendants move to strike J&J's prayer for attorneys' fees in its conversion claim.

## ANALYSIS

Following a general overview of the law governing motions to dismiss, the Court will address the tort of conversion and Defendants' arguments pertaining thereto.

**I.        Motions to Dismiss Generally**

The federal system of notice pleading requires only that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Therefore, the complaint need not allege detailed facts, *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007); likewise, "a 'complaint need not spell out every element of a legal theory' to provide notice." *Scott v. City of Chi.*, 195 F.3d 950, 951 (7th Cir. 1999) (quoting *Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 261 (7th Cir. 1998)).

However, in order to provide fair notice of the grounds for his claim, the plaintiff must allege sufficient facts "to raise a right to relief above the speculative level." *Pisciotta*, 499 F.3d at 633 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must offer "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id*. The plaintiff's pleading obligation is to avoid factual allegations "so

sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under [Federal] Rule [of Civil Procedure] 8." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Nevertheless, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8.

## II.     Conversion Generally

Defendants first argue that the conversion count should be dismissed because J&J failed to allege all of the necessary elements for such a claim.

"A conversion is any unauthorized act, which deprives a man of his property permanently or for an indefinite time." *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985) (citation omitted). Conversion is categorized as an intentional tort because it requires "an intentional exercise of dominion or control over a chattel." *Martel Enters. v. City of Chi.*, 584 N.E.2d 157, 159 (Ill. App. Ct. 1991) (citing *Thebus*, 483 N.E.2d at 1260; Restatement (Second) of Torts § 222A (1965)).

The elements of a cause of action for conversion that a plaintiff must ultimately establish are as follows: "(1)[it] has a right to the property; (2)[it] has an absolute and unconditional right to the immediate possession of the property; (3)[it] made a demand for possession; and (4) the defendant[s] wrongfully and without authorization assumed control, dominion, or ownership over the property." *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). With that said, "[a]ll that is required [for a plaintiff to succeed on a claim for conversion] is that defendant[s] exercise control over the chattel in a manner inconsistent with plaintiff's right of possession." *Jensen v.*

*Chi. and W. Ind. R.R. Co.*, 419 N.E.2d 578, 593 (Ill. App. Ct. 1981).

### III. Demand and Refusal as an Element of Conversion

Although often cited as an element of a conversion action, "demand [for possession] is unnecessary where another independent action of conversion is established." *Fortech, L.L. C. v. R.W. Dunteman Co., Inc.*, 852. N.E.2d 451, 462 (Ill. App. Ct. 2006). The futility of a demand may also render this element unnecessary. *See A.T. Kearney, Inc. v. INCA Int'l, Inc.*, 477 N.E.2d 1326, 1334 (Ill. App. Ct. 1985); *Monroe Cnty. Water Coop. v. City of Waterloo*, 437 N.E. 2d 1237, 1240 (Ill. App. Ct. 1982) (chronicling cases that did not impose the requirement of alleging demand refusal because defendants had sold or otherwise disposed of the property); C.J.S. *Trover* § 44 (West 2010). Illinois courts have even held that "one who knowingly takes possession of *personal property* which belongs to another is liable to the person whose property has been appropriated whether or not a demand is made for the return of such property." *Landfield Fin. Co. v. Feinerman*, 279 N.E.2d 30, 33 (Ill. App. Ct. 1972) (emphasis added).

Here, Defendants are technically accurate that J&J did not allege demand and refusal, and J&J has not argued to the contrary (in fact, J&J has not made any argument on this issue). Regardless, the Court will not deem the complaint insufficient because it lacks such an allegation.

Pursuant to *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999), J&J need not allege every element of tortious conversion to put Defendants on sufficient notice of a claim thereof. With its detailed facts and incorporation of conversion's general elements, the operative complaint meets the dismissal standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Moreover, the facts suggest that demand and refusal is not a necessary element to J&J's conversion claim for two reasons. First, Defendants' broadcast of the Program to their patrons could be deemed an independent action of conversion a la *Fortech*. Second, and more importantly, any demand made to Defendants would have been futile. In almost every case in Illinois requiring demand and refusal, the defendant still had possession of the chattel at issue. Put another way, demand and refusal as an element of conversion is predicated upon the defendant still having possession of the chattel. The only way J&J could meet this requirement is if it had called, wrote, or visited Defendants at the time the Program was being broadcast. This is not only unreasonable but flies in the face of the legal principles that define conversion.[1] *See DirecTV, Inc. v. Delaney*, 03 C 3444, 2003 WL 24232530, at *4 (N.D. Ill. Nov. 20, 2003) (emphasizing that one may be liable for conversion if he simply deprives another of his right to exclusive control or possession).

Even if the Court sided with Defendants on this issue, the proper course of action would be to allow J&J to amend its complaint. *Barry Aviation v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (District courts should "allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim.").

In sum, the Court finds that J&J has alleged all of the necessary elements to state a claim for tortious conversion under the applicable federal notice pleading standards.

---

[1] Any demand could also be considered futile because the Court must assume that Defendants knew they had no right in the goods. C.J.S. *Trover* § 44 (West 2010).

**IV.     Tangibility of the Underlying Property in a Conversion Claim**

Defendants next argue that J&J cannot state a claim because the Program does not represent a specific, identifiable piece of property allegedly required for a conversion claim under Illinois law. To support this contention, Defendants cite *In re Thebus*, 483 N.E.2d 1258 (Ill. 1985), wherein the Illinois Supreme Court cited a treatise on conversion that stated "[i]t is ordinarily held . . . that an action for conversion lies only for personal property which is tangible, or at least represented by or connected with something tangible . . . ." *Id*. at 1260 (citing 18 Am. Jur. 2d *Conversion* § 9, at 164 (1965)) (quotation marks omitted). With the treatise in mind, the *Thebus* Court went on to proclaim "that the subject of conversion is required to be an identifiable object of property of which the plaintiff was wrongfully deprived." *Id*. at 1260.

Contrary to Defendants' assertion, *Thebus* did not resolve the issue of whether intangible property can be the subject of conversion in Illinois and, if so, under what circumstances. *DirecTV, Inc. v. Ostrowski*, 334 F. Supp. 2d 1058, 1061-62 (N.D. Ill. 2004) (chronicling the cases within the Northern District of Illinois that split on whether unauthorized interception and display of satellite programming can constitute conversion under Illinois law); *DirecTV v. Delaney*, Case No. 03 C 3444, 2003 WL 24232530, at *3 (N.D. Ill. Nov. 20, 2003) ("[T]he full [tangibility] quote [in *Thebus*] indicates that [it] is not a hard and fast rule, but only that 'it is ordinarily held' to be true."). Because of the ambiguous language of *Thebus*, several Illinois appellate courts have held that a claim for conversion exists with respect to intangible property. *See, e.g., Stathis v. Geldermann, Inc.*, 692 N.E.2d 798, 818 (Ill. App. Ct. 1998) ("In [Illinois] . . . parties may recover for conversion of intangible assets."); *Conant v. Karris*, 520 N.E.2d 757, 763 (Ill. App. Ct. 1987). Relying on a treatise on torts, the Seventh Circuit has stated that "'there

is perhaps no very valid and essential reason why there might not be conversion' of intangible property." *FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 305 (7th Cir. 1990) (citing William Prosser & Robert Keeton, *Prosser & Keeton on the Law of Torts*, ch. 3, § 15, at 92 (5th ed. 1984)).

Here, the Court agrees with J&J that a claim for conversion can be stated regarding the property at issue. To be sure, *Thebus* requires the subject of a conversion claim to be an identifiable object, but the Court notes that intangible property can meet this requirement, especially if it is represented by or connected with something tangible. The Program, and possibly the exclusivity contract/rights related thereto, is the identifiable object at issue. Further, both the satellite signals that transmitted the Program and the Program's broadcast and display on televisions at Defendants' facility lend a tangible component to the underlying property. This is all that is required for property to be the subject of a conversion claim in Illinois. And, even if their facts are distinguishable, *Stathis* and *Conant* indicate that Illinois law is not well-settled on the issue and the J&J's claim for conversion should proceed.

Moreover, this case calls to mind well-established principles underscoring the tort of conversion. Namely, the tort of conversion is premised on the deprivation of one's "right of exclusive control," *Delaney*, 2003 WL 24232530, at *4, and Defendants deprived J&J of its exclusivity rights in the Program by broadcasting it without authorization. Although J&J was obviously not denied the *entire* benefit of the converted property, Defendants exercised control in a way that was inconsistent with J&J's rights. For these reasons, the Court is satisfied that the Program represents appropriate property in the context of a conversion claim, particularly at this stage in the litigation that mandates deference to the non-movant, J&J.

**V.     Defendants' Motion to Strike**

As a final matter, Defendants alternatively seek to strike J&J's prayer for attorneys' fees in its conversion claim. Defendants argue that there is no statute that provides J&J with recovery of attorneys' fees under such a claim and that the parties did not enter into any agreement regarding attorneys' fees. J&J did not respond to these arguments.

Under Federal Rule of Civil Procedure 12(f), upon a motion or upon its own initiative, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are generally disfavored because they are often employed for the sole purpose of causing delay. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *see also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (stating that "courts should not tamper with pleadings unless there is a strong reason for so doing."). Such motions "will only be granted if the language in the pleading has no possible relation to the controversy and is clearly prejudicial." *Jennings v. State of Ill. Dept. of Corrs.*, No. 03-4087, 2006 WL 374112, at *3 (C.D. Ill. Feb. 16, 2006) (citations and internal quotations omitted). The burden on a motion to strike is upon the moving party. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992); *Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs.*, 2 F. Supp.2d 1028, 1033 (N.D. Ill. 1998).

Here, while J&J does not argue why it should recover attorneys' fees under its conversion count, the Court will not be so brash as to strike the prayer for such fees from the operative complaint. It can hardly be said that a request for attorneys' fees represents a redundant, immaterial, impertinent, or scandalous matter. The Court has decided many

attorneys' fees issues in the past and has found that any ruling thereon is best saved for the later stages of litigation.  This case shall be no different.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss or, in the Alternative, Motion to Strike (Doc. 10).

**IT IS SO ORDERED.**
**DATED: November 17, 2010**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
